UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHASHI GENEME,<br><br>           Plaintiff,<br><br>    v.<br><br>ERIC H. HOLDER, JR., *et al.*,<br><br>           Defendants. | Civil Action 10-757 (RC) |

**MEMORANDUM OPINION**

      An Ethiopian citizen, Shashi Geneme was granted asylum in 2002. She applied to adjust her status to that of a lawful permanent resident—that is, a green card holder—in 2005. Pursuant to a national policy, U.S. Citizenship and Immigration Services ("USCIS" or "the agency"), an agency within the Department of Homeland Security, has placed her application on hold. In this suit, Ms. Geneme seeks an order that USCIS adjudicate her application. The agency has moved to dismiss her complaint for lack of subject matter jurisdiction and, in the alternative, for summary judgment.

**I. BACKGROUND**

      Shashi Geneme was born in Addis Ababa, Ethiopia. Compl. ¶ 13. In 2002, she came to the United States on a B-2 visa and applied for asylum, which she received that same year. *Id.* On her asylum application, Ms. Geneme indicated that she had financially supported the Oromo Liberation Front, an armed group that advocates for the creation of a separate state for ethnic Oromos. Decl. of Naboone J. Puripongs Jaeger, May 25, 2012, at ¶¶ 11–12. According to published reports, the Front has used guerilla tactics against Ethiopian government troops and detonated bombs that have killed and injured civilians. *Id.* ¶ 11.

In 2005, Ms. Geneme submitted an I-485 application for permanent residence. Compl. ¶ 13. In 2006, Ms. Geneme submitted fingerprints and other information that USCIS needed to process her application. *Id.* ¶¶ 17–18. A long silence followed. In 2008, she began to contact USCIS about the delay in processing her application. *Id.* ¶ 19. Two letters in early 2009 informed her that USCIS was "actively processing this case." Compl., Ex. H (Letter from USCIS, Jan. 20, 2009); *id.*, Ex. I (Letter from USCIS, Apr. 28, 2009). In December of that year she received another letter, which stated that:

> Your case is on hold because you appear to be inadmissible under [§] 212(a)(3)(B) of the [Immigration and Nationality Act], and USCIS currently has no authority not to apply the inadmissibility ground(s) to which you appear to be subject. Rather than denying your application based on inadmissibility, we are holding adjudication in abeyance while the Department of Homeland Security considers additional exercises of the Secretary of Homeland Security[']s discretionary exemption authority. Such an exercise of the exemption authority might allow us to approve your case.

*Id.*, Ex. K (Letter from USCIS, Dec. 11, 2009). Six months later, Ms. Geneme filed this suit.

The statutory provision which the letter cited makes aliens who have provided material support to a terrorist organization inadmissible as a general matter. As amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, the Immigration and Nationality Act ("INA") establishes three categories of terrorist organization: two formally designated by the Secretary of State, 8 U.S.C. § 1182(a)(3)(B)(vi)(I)–(II), and a third that, although not formally designated, nonetheless "engages in, or has a subgroup which engages in" terrorist activities, *id.* § 1182(a)(3)(B)(vi)(III). Groups in this third category are known as "Tier III" or "undesignated" terrorist organizations. In the Consolidated Appropriations Act of 2008 ("CAA"), Pub. L. No. 110-161, 121 Stat. 1844, 2364–65, Congress gave both the Secretary of State and the Secretary of Homeland Security the authority to, "after consultation with the Attorney General" and each

other, "determine in such Secretary's sole unreviewable discretion . . . that subsection (a)(3)(B)(vi)(III) of this section shall not apply to a group within the scope of that subsection." 8 U.S.C. § 1182(d)(3)(B)(i). By doing so, either Secretary can remove the bar on admissibility for aliens who have supported that group.

In March 2008, the deputy director of USCIS issued a memorandum in response to that grant of statutory authority. The memo stated that:

> The Secretary [of Homeland Security] has not exercised his discretionary authority since passage of the CAA, and the Department of Homeland Security (DHS) currently is considering several groups and categories of cases as possible candidates for additional terrorist-related inadmissibility provision exemptions. Because new exemptions may be issued by the Secretary in the future, until further notice adjudicators are to withhold adjudication of cases in which the only ground(s) for referral or denial is a terrorist-related inadmissibility provision(s) and the applicant falls within one or more of the below categories:
>
> . . . .
>
> 2. Applicants who are inadmissible under the terrorist-related provisions of the INA based on any activity or association that was *not under duress* relating to any . . . Tier III organization [other than those organizations specifically named by the CAA]. . . .
>
> . . . .
>
> Adjudicators may also raise through their local chain of command to appropriate Headquarters personnel any case which presents compelling circumstances that warrant consideration of a new or individualized exemption that would not otherwise be covered by the above hold instructions.
>
> . . . .
>
> Adjudicators will receive additional guidance on continued or lifted holds on these cases as decisions are reached at the DHS level.

Compl., Ex. O (Memo. of Mar. 26, 2008), at 2–3. In early 2009, USCIS put out additional guidance but did not lift the adjudication hold on cases such as Ms. Geneme's. Instead, the agency renewed the requirement that cases involving "[a]pplicants who are inadmissible under the terrorist-related provisions of the INA based on any activity or association that was *not under*

3

*duress* relating to any Tier III organization, other than those for which an exemption currently exists," be placed on hold. Compl., Ex. N (Memo. of Feb. 13, 2009), at 2. An applicant could, however, request that the hold be lifted in her case. "If the adjudicating office receives a request from the beneficiary and/or attorney of record to adjudicate a case on hold per this policy (including the filing of a mandamus action in federal court) . . . the case should be elevated through the chain of command to appropriate Headquarters personnel. Guidance will be provided by USCIS headquarters on whether or not the case should be adjudicated." *Id.* at 3. This suit constitutes such a request, but Ms. Geneme has received no indication of when her case will be adjudicated by USCIS.

In August 2012, while the instant motion was pending, the Secretary of the Department of Homeland Security exercised her discretionary authority under 8 U.S.C. § 1182(d)(3)(B)(i). The Secretary established a multi-factor test to determine whether to exempt from inadmissibility an alien who has provided material support to a Tier III terrorist organization. *See* Exercise of Authority Under the Immigration and Nationality Act, 77 Fed. Reg. 49,821 (Aug. 17, 2012). One element of that test evaluates the terrorist group, denying an exemption if it has ever "targeted U.S. interests or persons" or "engaged in a pattern or practice of torture, . . . genocide, . . . or the use of child soldiers." *Id.* at 49,821. USCIS is currently consulting with the Department of Homeland Security to determine whether supporters of the Oromo Liberation Front will qualify for exemption from inadmissibility under the Secretary's criteria. The agency has no estimate as to when it will complete its determination. Decl. of Naboone J. Puripongs Jaeger, Jan. 17, 2013, at ¶¶ 3–6. Ms. Geneme's application remains on hold.

## II.  LEGAL STANDARD

### A.  Jurisdiction

This is a court of limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  The plaintiff bears the burden of establishing the court's jurisdiction.  *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In evaluating the defendants' motion to dismiss the complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must take the plaintiff's factual allegations as true.  *See El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 839 (D.C. Cir. 2010) (en banc).  It may, "when necessary . . . look beyond the complaint to 'undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Mowat v. U.S. Parole Comm'n*, 815 F. Supp. 2d 199, 204 (D.D.C. 2011) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### B.  Substantive Standard

When a plaintiff seeks a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), the court "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000).  "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)).

### III. ANALYSIS

**A. Jurisdiction**

"[I]n cases brought under APA § 706(1) seeking to 'compel agency action unlawfully withheld or unreasonably delayed,' 5 U.S.C. § 706(1), when the agency has failed to act within a 'reasonable time,' *id.* § 555(b), jurisdiction lies in the district court." *In re Natural Resources Def. Council*, 645 F.3d 400, 406 (D.C. Cir. 2011). But in a section captioned "Matters not subject to judicial review" and a subsection headed "Denials of discretionary relief," the Immigration and Nationality Act provides that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D),[1] and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title,[2] or

---

[1] "Subparagraph (D) of § 1252(a)(2), enacted in 2005, REAL ID Act of 2005 (REAL ID Act), § 106(a), 119 Stat. 310, adds:

> Nothing in subparagraph (B) . . . or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

The addition of 8 U.S.C. § 1252(a)(2)(D) in 2005 did not change the operative language of § 1252(a)(2)(B)(ii) as enacted in 1996.

The REAL ID Act amendments also inserted into this introductory clause, *inter alia*, the words '(statutory or nonstatutory).' § 106(a)(1)(A)(ii), 119 Stat. 310. The introductory clause, however, does not define the scope of 8 U.S.C. § 1252(a)(2)(B)(ii)'s jurisdictional bar. It simply informs that once the scope of the bar is determined, jurisdiction is precluded regardless of what any *other* provision or source of law might say." *Kucana v. Holder*, 130 S. Ct. 827, 831 n.1 (2010).

[2] "Sections 1182(h) and 1182(i) address waivers of inadmissibility based on certain criminal offenses, and fraud or misrepresentation, respectively; § 1229b addresses cancellation

>	(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter[3] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.[4]

8 U.S.C. § 1252(a)(2)(B). If the decision by USCIS to place a hold on Ms. Geneme's application for adjustment of status was, as the defendants argue, a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under" Title 8, Chapter 12, Subchapter II "to be in the discretion of the Attorney General or the Secretary of Homeland Security," then this court must dismiss the case for lack of jurisdiction.[5]

Many district courts—but, as yet, no courts of appeals—have addressed that question, identifying two major elements of the inquiry. First, has USCIS made a decision or taken an action? That question presents itself with greatest force in cases where applicants challenge unexplained delays in adjudication. In that context, some courts have found that "'action' in § 1252(a)(2)(B)(ii) encompasses the *entire* process of reviewing an adjustment application, including . . . the pace at which the process proceeds," *Safadi v. Howard*, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006); *accord Orlov v. Howard*, 523 F. Supp. 2d 30, 36 (D.D.C. 2007); *Luo v.*

---

of removal; § 1229c, voluntary departure; and § 1255, adjustment of status." *Kucana*, 130 S. Ct. at 832 n.2.

   [3] "'[T]his subchapter' refers to Title 8, Chapter 12, Subchapter II, of the United States Code, codified at 8 U.S.C. §§ 1151–1381 and titled 'Immigration.'" *Kucana*, 130 S. Ct. at 832 n.3 (alteration in original).

   [4] "The exception for relief under § 1158(a) refers to administrative decisions whether to grant asylum." *Kucana*, 130 S. Ct. at 832 n.4.

   [5] USCIS exercises the discretionary authority to adust the status of aliens who have been granted asylum, which was originally conferred on the Secretary and Attorney General. *See* 8 U.S.C. § 1159(b) (grant of authority to adjust status); 6 U.S.C. §§ 271(b), 557 (transfer of authority to USCIS).

*Keisler*, 521 F. Supp. 2d 72, 74 (D.D.C. 2007), while others have ruled that "by the use of the terms 'decision or action,' § 1252(a)(2)(B)(ii) only bars review of actual discretionary decisions, not the failure to render a decision," *Liu v. Novak*, 509 F. Supp. 2d 1, 6 (D.D.C. 2007). Both *Safadi* and *Liu*—as well as *Orlov* and *Luo*—concerned applications for adjustment of status that were under active (though deliberate) consideration at the time of the suit. Ms. Geneme's application, by contrast, has been formally placed on hold. There is no question that USCIS has made a decision with regard to that application: it has decided not to adjudicate the application at this time. This court's "review of the . . . decision to hold the plaintiff's application in abeyance" would therefore not be "merely a review of 'inaction'" as some courts have held in the case of unexplained delays. *Singh v. Napolitano*, 710 F. Supp. 2d 123, 132 (D.D.C. 2010); *accord Seydi v. USCIS*, 779 F. Supp. 2d 714, 719–20 (E.D. Mich. 2011) (noting that USCIS had not "simply permitt[ed] Plaintiff's application to languish without consideration or action" by putting it on hold).

The more difficult question is whether "the authority for" that decision "is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security" that has been transferred to USCIS. 8 U.S.C. § 1252(a)(2)(B)(ii). District court judges have disagreed. On the one hand, the ultimate decision whether to adjust the status of an alien who has been granted aslyum is certainly made discretionary by the relevant subchapter. *See* 8 U.S.C. § 1159(b) ("The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who" meets certain

statutory requirements.); *Beshir v. Holder*, 853 F. Supp. 2d 1, 8 (D.D.C. 2011) (agreeing that "the Secretary clearly has discretionary authority to adjudicate the plaintiff's adjustment of status, *see* 8 U.S.C. § 1159(b)"). And some courts found themselves to be stripped of jurisdiction to review the status of unadjudicated adjustment applications. Those courts have grounded their rulings in USCIS's explicit discretion to make decisions about the adjustment of an alien's status and its authority to prescribe regulations governing the consideration of such applications, concluding that those statutory grants of discretion and authority also encompass the discretion to control the procedures under which applications are considered. *See Seydi*, 779 F. Supp. 2d at 718 (endorsing *Singh*'s ruling "that the decision to hold an application in abeyance was encompassed within the Secretary's discretionary power 'to promote regulations that she feels are necessary to exercise her authority to grant permanent resident status to an asylee'" (quoting *Singh*, 710 F. Supp. 2d at 129)); *Orlov*, 523 F. Supp. 2d at 35 ("In the absence of statutorily prescribed time limitations or statutory factors to guide USCIS in crafting regulations for the adjustment process, it is difficult to determine how the pace of processing an application could be anything other than discretionary."); *Luo*, 521 F. Supp. 2d at 74 (endorsing *Safadi*'s ruling "that the absence of statutory time limits imposed by Congress suggests that Congress intended to include the pace of the process as part of its broad grant of discretion to the Attorney General in such matters").

    Courts reaching the contrary conclusion distinguish between the agency's discretion regarding the substance of an adjustment decision and its authority to make—or not to make—that decision in the first place. As one court has written, "[t]he Court does indeed lack jurisdiction to review a denial of discretionary relief. But failing to make a decision—any

decision—is not the same as deciding to deny relief." *Al Jabari v. Chertoff*, 536 F. Supp. 2d 1029, 1036 (D. Minn. 2008). Two judges in this district have found that "the . . . discretionary authority to withhold adjustment applications is not 'specified under this subchapter,'" and therefore ruled that jurisdiction over claims that adjudication has been unreasonably delayed are "not barred by the INA's jurisdiction-stripping provision." *Beshir*, 853 F. Supp. 2d at 9; *Liu*, 509 F. Supp. 2d at 7 ("§ 1252(a)(2)(B)(ii) does not apply to all discretionary decisions, but only those decisions 'the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security.' . . . The subchapter . . . 'does not address, much less specify any discretion associated with, the pace of application processing.' Thus, plaintiff's claim is not barred by § 1252(a)(2)(B)(ii) . . . ." (second quotation from *Duan v. Zamberry*, 2007 WL 626116, at *2 (W.D. Pa. Feb. 23, 2007))); *accord Tang v. Chertoff*, 493 F. Supp. 2d 148, 153–54 (D. Mass. 2007) ("The clear meaning of 8 U.S.C. § 1252(a)(2)(B)(ii) is that courts may not review decisions specified as discretionary by the INA. Despite the care taken in the INA to specify the *substance* of an adjustment of status decision as discretionary, the *pacing* of such a decision is not so specified."). Many other courts—"the overwhelming majority of district courts," one judge has suggested, *Hassane v. Holder*, 2010 WL 2425993, at *3 (W.D. Wash. June 11, 2010)—have similarly "concluded that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar judicial review of claims alleging unreasonable delays in the disposition of I-485 applications of asylees associated with Tier III terrorist organizations," *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 932 (D. Minn. 2011); (citing *Sultan v. Roark*, 2010 WL 1992195, at *3 (E.D. Cal. May 13, 2010); *Khan v. Scharfen*, 2009 WL 941574, at *4–5 (N.D. Cal. Apr. 6, 2009); *Sawad v. Frazier*, 2007 WL 2973833, at *2 (D. Minn. Oct. 9, 2007)).

That conclusion is supported by the Supreme Court's recent decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010). *Kucana* also involved the interpretation of § 1252(a)(2)(B)(ii). Calling "specified under this subchapter" the "key words" in § 1252(a)(2)(B), *Kucana*, 130 S. Ct. at 831, the Court noted that "§ 1252(a)(2)(B)(ii), speaks of authority 'specified'—not merely assumed or contemplated—to be in the Attorney General's discretion. 'Specified' is not synonymous with 'implied' or 'anticipated.'" *Id.* at 834 n.10. The *Kucana* Court read § 1252(a)(2)(B)(ii) in the context of § 1252(a)(2)(B)(i), observing that the determinations listed by the earlier provision "are *substantive decisions* made by the Executive in the immigration context as a matter of grace, things that involve whether aliens can stay in the country or not." *Id.* at 837 (brackets, citation, ellipses, and internal quotation marks omitted; emphasis added). It noted that the "decisions . . . shielded from court oversight by § 1252(a)(2)(B)(ii), are of a like kind." *Id.* Because a decision on a motion to reopen removal proceedings—the motion at issue in *Kucana*—is an "adjunct ruling[]," "a procedural device serving to ensure that aliens are getting a fair chance to have their claims heard" which a court could reverse without "direct[ing] the Executive to afford the alien substantive relief," the Supreme Court held that decisions on such motions were subject to judicial review. *Id.* (internal quotation marks and brackets omitted). Here too, an order that USCIS adjudicate Ms. Geneme's application would not afford her substantive relief, but only ensure that she got a fair chance to have her claims heard in a timely manner.

Finally, the *Kucana* Court invoked a well-known canon of construction to dispell "[a]ny lingering doubt about the proper interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii)." *Id.* at 839. "[T]he presumption favoring judicial review of administrative action" provides that "[w]hen a

11

statute is 'reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" *Id.* (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995)).  The Court noted that it has "consistently applied that interpretive guide to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction," and that clear and convincing evidence of Congressional intent was required to displace the presumption.  *Id.*  The *Kucana* Court found no such evidence; neither has this court found any.

"[T]he title of § 1252(a)(2)(B), '*Denials* of discretionary relief,' confirms that the provision was not intended to sweep as broadly as defendants contend." *Al Jabari*, 536 F. Supp. 2d at 1036.  "While the ultimate decision to grant or deny an application for adjustment of status is unquestionably discretionary, there exists a non-discretionary duty to act on and process the application." *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007).  "The language of § 1252(a)(2)(B)(ii) . . . . refers not to 'discretionary decisions,' . . . but to acts the *authority* for which is *specified* under the INA to be discretionary." *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003).  For that reason, "[f]ederal appellate courts have . . . construed § 1252(a)(2)(B)(ii) narrowly." *Al-Rifahe*, 776 F. Supp. 2d at 932; *see, e.g.*, *Iddir v. INS*, 301 F.3d 492, 497 (7th Cir. 2002) (holding that § 1252(a)(2)(B) "only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections").  This court does so as well.  Title 8, Chapter 12, Subchapter II does not specify that USCIS shall have discretion to decide whether and when to adjudicate applications for adjustment of status, and so the court

retains jurisdiction over Ms. Geneme's claim that it has unreasonably delayed the adjudication. The court will therefore proceed to address the government's motion for summary judgment.

### B. Claims of Unreasonable Delay

The Administrative Procedure Act empowers courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also id.* § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."). This Circuit applies a six-factor test to determine whether agency action has been unreasonably delayed:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (citations and quotation marks omitted).

"With regard to the first and second *TRAC* factors, the APA's general reasonableness standard applies in the absence of an explicit timeline in the relevant statutes." *Al-Rifahe*, 776 F. Supp. 2d at 936 (citing *Hassane*, 2010 WL 2425993, at *4). The government argues that its

decision to place a hold on Ms. Geneme's application is reasonable because the process of deciding how to exercise its discretionary authority to exempt supporters of Tier III groups from inadmissibility is painstaking.  But this argument presupposes that Ms. Geneme's application cannot be processed until a final decision has been made as to whether supporters of the Oromo Liberation Front should be exempted from inadmissibility.  USCIS of course has another option: it can deny the application.  Indeed, the agency has informed Ms. Geneme that "USCIS currently has no authority not to apply the inadmissibility ground(s) to which you appear to be subject," but that "[r]ather than denying [her] application based on inadmissibility" the agency has decided to "hold[ ] adjudication in abeyance" in the hopes of eventually resolving the matter in Ms. Geneme's favor.  Compl., Ex. K (Letter from USCIS, Dec. 11, 2009).  Ms. Geneme would apparently prefer any resolution—even an adverse determination—to an indefinite delay.  Already her application has been pending for eight years, and on hold for five.  She does not argue that the agency's evaluation of the Oromo Liberation Front has been unreasonably delayed; rather, she argues that the agency has some ongoing obligation to process *her application*, notwithstanding its uncertainty about the status of the group she has supported.

      The court does not doubt that the determination of whether to grant an exemption to Ms. Geneme is "a delicate and difficult task" nor that "[USCIS] is striving to maintain consistency and make reasoned decisions." *Al-Rifahe*, 776 F. Supp. 2d at 936 (quoting *Al Karim v. Holder*, 2010 WL 1254840, at *3 (D. Colo. Mar. 29, 2010) (alteration in *Al-Rifahe*)).  But that difficulty does not eliminate "the agency's obligation to act on plaintiff's application in a reasonably timely manner." *Id.* (quoting *Al Karim*, 2010 WL 1254840, at *3); *accord Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1144 (D. Ariz. 2008) ("The lack of a specific timetable does not mean that

USCIS can take an infinite amount of time to process Plaintiff's adjustment of status application."). It should not take eight years to act on an application for permanent residence. *Accord Han Cao v. Upchurch*, 496 F. Supp. 2d 569, 577 (E.D. Pa. 2007) (concluding that "a four-year delay in the review of an application for legal permanent residence is presumptively unreasonable"); *Elkhatib v. Butler*, 2005 WL 5226742, at *2 (S.D. Fla. June 7, 2005) (holding that "four years is an unreasonable length of time for Petitioner's Application [for adjustment of status] to remain pending"); *see Al-Rifahe*, 776 F. Supp. 2d at 938 (finding that an "indefinite hold on the adjudication of [an adjustment of status] application" may be unreasonable); *see also In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (six year delay in responding to a petition held "nothing less than egregious"); *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984) (five-year delay unreasonable); *Public Citizen Health Research Grp. v. Auchter*, 702 F.2d 1150, 1157–59 (D.C. Cir. 1983) (per curiam) (three-year delay unreasonable); *MCI Telecomms. Corp. v. FCC*, 627 F.2d 322, 325 (D.C. Cir. 1980) (four-year delay in determining a tariff held unreasonable).

      The third and fifth *TRAC* factors are closely related in this case. "[D]elays that might be reasonable in the sphere of economic regulation are less tolerable" when Ms. Geneme's welfare is at stake, and so the court must consider the "nature and extent of the interests" that she argues have been "prejudiced by the delay." *In re United Mine Workers*, 190 F.3d at 549 (quoting *TRAC*, 750 F.2d at 80). Ms. Geneme argues that she cannot adequately plan for her future without knowing whether or not she will be permitted to adjust her status, because her ability to work and to travel would be so much greater as a permanent resident than they are as an asylee. She asserts—and the court does not doubt—that this uncertainty has a substantial and

substantially negative impact on her welfare and her peace of mind.  The government, in turn, argues that Ms. Geneme actually benefits from the delay because it allows USCIS to consider the possibility that it should grant her application at a later date rather than simply denying it now.  As other courts have noted, Ms. Geneme "undoubtedly 'understands that [her] application may be denied, but the consequences of the indefinite . . . delay in adjudication of [her] application'" are also considerable.  *Al-Rifahe*, 776 F. Supp. 2d at 937 (quoting *Al Karim*, 2010 WL 1254840, at *4).  And Ms. Geneme presumably would not have brought this suit unless she preferred the likelihood that her application would be denied to the uncertainty of not knowing when it would be adjudicated.  The court therefore concludes that the third and fifth *TRAC* factors weigh in Ms. Geneme's favor.

Finally, the court considers "the effect of expediting delayed action on agency activities of a higher or competing priority."  *In re United Mine Workers*, 190 F.3d at 549 (quoting *TRAC*, 750 F.2d at 80).  The government argues that an order requiring the immediate adjudication of Ms. Geneme's application would encroach on the discretion that Congress has granted the Secretaries of State and Homeland Security to exempt Tier III terrorist groups from the inadmissibility provisions of the INA.  The court is somewhat perplexed by this argument.  As two other courts have noted, "[d]efendants provide no reason why plaintiff's application cannot be adjudicated immediately, subject to future re-opening and review when and if USCIS policies regarding [the Oromo Liberation Front] change."  *Al-Rifahe*, 776 F. Supp. 2d at 937 (quoting *Al Karim*, 2010 WL 1254840, at *3).  Adjudicating Ms. Geneme's application would not

substantially interfere with the government's consideration of the broader issue of whether to issue a blanket exemption to supporters of the Oromo Liberation Front.[6]

### IV.  CONCLUSION

"That classification of the [Oromo Liberation Front] *may* change at some indeterminate point in the future does not justify leaving plaintiff's application in an indefinite state of limbo." *Al-Rifahe*, 776 F. Supp. 2d at 937 (quoting *Al Karim*, 2010 WL 1254840, at *3).  Ms. Geneme's application has been pending for eight years, and on hold for five.  The court concludes that, under the six-factor test set out in *TRAC*, the government is not entitled to a judgment that this delay is reasonable.  The government's motion will therefore be denied.

Ms. Geneme has not moved for a writ of mandamus.  USCIS and the Department of Homeland Security appear to be actively considering whether supporters of the Oromo Liberation Front will be eligible for exemptions from inadmissibility under the Secretary of Homeland Security's recent exercise of her discretionary authority.  But Ms. Geneme seems to prefer a denial of her application to a further delay in its adjudication.  She should carefully consider that preference before filing her mandamus motion.

Rudolph Contreras<br>United States District Judge

Date: March 31, 2013

---

[6] "As to the sixth *TRAC* factor, there is no evidence of any impropriety behind the delays, but the Court need not find any in determining whether the delay is unreasonable under the APA."  *Al-Rafahe*, 776 F. Supp. 2d at 937 n.7.